IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEANDRE PAYTON JONES, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:23-cv-313 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| L. ESTOCK, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**

Pending before the Court[1] is Respondents' Motion to Dismiss (ECF 17) the Petition for a Writ of Habeas Corpus (ECF 3) filed by state prisoner DeAndre Payton Jones under 28 U.S.C. § 2254. For the reasons below, the Court will grant Respondents' Motion, deny Jones' claims for habeas relief as time-barred and procedurally defaulted and deny a certificate of appealability.

**I.      Relevant Background**

In the Petition, Jones challenges the judgment of sentence imposed on him by the Court of Common Pleas of Indiana County in 2017. Attorney Gary Knaresboro ("trial counsel") represented Jones in his trial.

The Superior Court of Pennsylvania summarized the evidence introduced at the trial as follows:

> We glean the following facts from the certified record, particularly from the notes of testimony from [Jones'] trial. *See* N.T. Trial, 8/22-8/25/17. On September 29, 2014, Michael Eades, Jr., drove [Jones], Kevin King, and Stanley Boynton from Altoona to Tyron Howard's apartment in Blairsville. Eades told the others that he was going to pick up some cash that Howard ("the Victim") owed to him in connection with their work in the illicit drug trade.[2] While en route, Eades told them all to turn off their cell phones.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

² King and Eades are brothers; [Jones] is King's cousin and was visiting from Baltimore at the time. N.T. Trial, 8/22/17, at 36. Eades and the Victim were allegedly best friends. *Id.* at 301.

When they arrived at the Victim's apartment, Eades told the Victim he was there for the money he owed him and proceeded to gather up money that was laying around the living room in banded bundles. An argument ensued between Eades and the Victim, and King pulled out a gun, pointing it at the Victim while demanding that he give Eades the money he owed him. The Victim gave Eades money that was under the cushion of a chair. King and Eades then directed [Jones] and Boynton to get cash from the bedroom. [Jones] found the money in the bedroom, put it in a bag, and handed the bag to Boynton. Boynton and [Jones] then returned to the living room, and Eades directed [Jones] to tie up the Victim with an extension cord while the men gathered more money from around the living room and put it into the bag. After [Jones] tied the Victim's ankles with an extension cord and his wrists with a black USB cable, as ordered by Eades, he tried to remove his DNA from the cords with his saliva.

Soon thereafter, King grabbed a sword from the Victim's collection held in a bin in the living room and began stabbing the Victim. Boynton ran out of the house with the bag of money and jumped into the back of the car. Eades directed [Jones] to go find Boynton, and King and Eades continued stabbing the Victim.³

³ There were discrepancies in the testimony as to whether the Victim was tied up before or after [Jones] went to the bedroom, and where [Jones] was located when the stabbing began. It was within the province of the jury to reconcile those discrepancies in order to reach its verdict. *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003).

King and Eades shortly thereafter returned to Eades's vehicle where [Jones] and Boynton were waiting. They all drove back to Altoona, stopping at a Sheetz in Ebensburg along the way. When they got to King's apartment, Eades and King split up the money, giving [Jones] $10,000.

Police officers found the Victim's body three days later lying on his living room floor. An electric cord bound the Victim's feet, another cord bound his hands, and a sock was in his mouth. The body had nearly 40 stab wounds, and a sword impaled the Victim's skull to the floor.

After extensive investigation by the Pennsylvania State Police, the Commonwealth charged the four men with murder and other crimes. With respect to [Jones], the Commonwealth charged him with Second-Degree Murder, Conspiracy to Commit Criminal Homicide, Robbery, and Conspiracy to Commit Robbery.

On August 21, 2017, [Jones] proceeded to a jury trial,⁴ where the Commonwealth presented testimony from numerous police officers, investigators, forensic experts, and Boynton. *See* N.T. Trial, 8/22/17-8/23/17, at 34-240.⁵ The Commonwealth did not call King as a witness.

2

> ⁴ Eades had a separate trial in June 2017; King and Boynton pled guilty. King testified at Eades' trial as a Commonwealth witness.
>
> [Jones] called King to testify on his behalf. *See* N.T. at 242-80. King testified that [Jones] was like a little brother to him. He stated that [Jones] was not involved in the illicit drug trade and did not know that a robbery was going to happen that night. *See id.* at 245-47. King stated that once the trouble started, he knew [Jones] "didn't want to be there," and that [Jones] "was uncomfortable" when Eades directed him to tie up the Victim. *Id.* at 251. He also stated that Eades gave money to [Jones] as "shut up, don't say nothing money." *Id.* at 256. King also testified that as part of his plea agreement, he agreed to testify for the Commonwealth against Eades, but not against [Jones]. *Id.* at 259. [Jones'] counsel did not question King about any other aspect of his plea agreement.
> [Jones] testified on his own behalf. He stated that he has known Eades and King his entire life and that they could be violent men, so he was afraid of them when they got upset. He stated that he did not know during the drive to Blairsville that they were going to rob the Victim. He stated that because he was afraid of Eades, he turned off his cell phone, gathered money in the Victim's apartment, and tied up the Victim when Eades told him to do so. He also said that, although he heard commotion in the living room while he was collecting money from the bedroom, he did not see the Victim getting stabbed before Eades told him to leave the house to find Boynton. *See* N.T., 8/23/17, at 289-303. He stated that he took the money from Eades after the Robbery because Eades and King gave it to him for making him be part of the Robbery. *See id.* at 306. [Jones] also testified that he did not know about the Victim's death until three days later when he ran into Eades's mother in a mall in Baltimore. *Id.* at 308-09.

*Commonwealth v. Jones*, 2019 WL 1096542, at *2 (Pa. Super. Ct. Mar. 8, 2019) ("*Jones I*") (additional footnotes omitted).

At the end of the trial, the jury found Jones guilty of second-degree murder, robbery, and conspiracy to commit robbery and not guilty of conspiracy to commit murder. On September 8, 2017, the trial court sentenced Jones to a term of incarceration of life without parole.

Jones, through new counsel Attorney Elizabeth Tibbott, filed a direct appeal with the Superior Court in which he raised claims not relevant to this federal habeas case.² *Id.* at *3. The

---

² On direct appeal, Jones claimed that the trial court erred: (1) "in concluding that there was no *Brady* violation for failure of the Commonwealth to disclose terms of the plea agreement and/or
*Footnote continue on next page…*

3

Superior Court of Pennsylvania affirmed Jones' judgment of sentence in *Jones I*. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on September 17, 2019. (Resp's Ex. 5.)

Jones did not petition for a writ of certiorari with the Supreme Court of the United States. Thus, his judgment of sentence became final under both state and federal law on or around December 16, 2019, when the 90-day period for him to do so expired. 42 Pa. Cons. Stat. § 9545(b)(3); 28 U.S.C. § 2244(d)(1)(A). *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

On September 16, 2020, Jones, through counsel, filed his first petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 et seq.[3] (Resp's Ex. 6.) Jones raised only one claim of ineffective assistance of trial counsel in this PCRA proceeding, and it is not relevant to this federal habeas case.[4] The trial court, now the PCRA court, held a hearing on Jones' claim at which trial counsel testified. (Resp's Ex. 9). Following the hearing, the PCRA court denied Jones' claim. (Resp's Exs. 10, 11.)

---

other benefits to cooperating co-defendant, Kevin King"; (2) by not granting counsel's motion for mistrial, after a Commonwealth witness commented about [Jones] being incarcerated in the Cambria County Jail"; (3) "by overruling defense counsel's objection and permitting the Commonwealth to show the murder weapon, still covered with the victim's blood, to the jury"; (4) in finding that the evidence was sufficient to support convictions of Murder in the Second Degree, Robbery, and Conspiracy to Commit Robbery"; and (5) "in finding the verdict was not against the weight of the evidence, thus did the trial court err in denying defense counsel's request for a new trial[.]" *Jones I*, 2019 WL 1096542, at *3.
[3] Attorney Tibbott also represented Jones in this first and second PCRA proceedings.
[4] Jones claimed that trial counsel was ineffective for "open[ing] the door to unduly prejudicial evidence against [Jones]" during cross-examination of Boynton by pursing a line of questioning that allowed Boynton to insinuate incorrectly that Jones was with him in the Cambria County Jail. (Resp's Ex. 6.)

Jones then filed an appeal with the Superior Court. On May 3, 2022, the Superior Court affirmed the PCRA's court decision in *Commonwealth v. Jones*, 280 A.3d 7 (Pa. Super. Ct. 2022) ("*Jones II*"). Jones had 30 days to petition for allowance of appeal with the Pennsylvania Supreme Court. Pa.R.A.P. 1113(a). That 30-day period lapsed without Jones doing so. Thus, Jones' first and only timely filed PCRA proceeding concluded on or around June 2, 2022, when the time for him to petition for allowance of appeal expired.

Jones, through counsel, filed a second PCRA petition on or around June 2, 2022. (Pet's Ex., ECF 22-1 at pp. 13-8.) He asserted that trial counsel was ineffective for advising him to give a statement to the police. According to Jones, trial counsel told him that if he gave the statement he could enter a guilty plea and receive a sentence of 11 ½ to 23 months of incarceration. Jones asserted that trial counsel failed to enforce the alleged plea agreement. (*Id.*)

On December 27, 2022, the PCRA court denied this second, counseled petition. (ECF 3 at pp. 11-15.) The court held that the petition was untimely under the applicable one-year statute of limitations, which is codified at 42 Pa. Cons. Stat. § 9545(b) and which is jurisdictional, *see, e.g.*, *Commonwealth v. Ali*, 86 A.3d 173, 177 (Pa. 2014). (12/27/22 PCRA Ct. Order, ECF 3 at pp. 12-15.) The PCRA court also held that Jones waived the claim asserted in this second petition because he "had the opportunity to raise the current issues regarding ineffective assistance of counsel when he filed his first [PCRA] Petition, which also set forth a claim of ineffective assistance of counsel." (*Id.* at pp. 14-15.)

Jones did not appeal the PCRA court's order denying the second petition to the Superior Court.

Jones filed his Petition for a Writ of Habeas Corpus (ECF 3) with this Court, at the very earliest, on February 17, 2023, the date he avers he placed the Petition in the prison mailing system.

5

(*Id.* at p. 28) Jones raises two claims for relief. In Ground One, Jones brings the same ineffective assistance of trial counsel claim that he raised in his second PCRA proceeding. (*Id.* at pp. 7-8.) In Ground Two, Jones claims that the prosecution violated his right to due process when it reneged on the alleged plea agreement it had reached with the defense. (*Id.* at pp. 16-17.)

In their Motion to Dismiss (ECF 17), Respondents assert that the Court should deny the Petition because Jones' claims are time-barred under the applicable one-year statute of limitations, which is set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and codified at 28 U.S.C. § 2244(d). Respondents also assert that Jones procedurally defaulted both of his grounds for relief.

Jones has filed his Reply (ECF 22) and Respondents' Motion is ripe for review.[5]

## II. Discussion

### A. Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Jones' burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

---

[5] Jones asserts that Respondents' Motion is improper because they did not address the merits of his claims. This argument has no merit because the Court's Local Rule 2254(E)(1)(a) permits a respondent to file, instead of filing an answer, a "motion to dismiss if the respondent believes that there is a clear procedural bar to the action, such as the failure to exhaust, statute of limitations, abuse of the writ, and/or successive petitions."

B. Jones' Claims are Time-barred

In 1996, Congress made significant amendments to the federal habeas statutes with the enactment of AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). AEDPA reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

AEDPA substantially revised the law governing federal habeas corpus. Among other things, AEDPA set a one-year limitations period for filing a federal habeas petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

AEDPA's statute of limitations is codified at 28 U.S.C. § 2244(d) and it requires, with a few exceptions not applicable here, that habeas corpus claims under 28 U.S.C. § 2254 be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A).[6] AEDPA also provides that "[t]he time during which *a properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d) (emphasis added).

---

[6] The date on which AEDPA's one-year limitations period commenced is determined on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 118-22 (3d Cir. 2004). In this case, the statute of limitations for Jones' claims began to run on the date his judgment of sentence became final (December 16, 2019) in accordance with § 2244(d)(1)(A). The remaining provisions § 2244(d)(1) do not apply to this case. 28 U.S.C. § 2244(d)(1)(B)-(D).

7

As explained above, Jones' judgment of sentence became final on December 16, 2019. He filed his first (and only timely) PCRA petition 274 days later, on September 16, 2020.[7] In accordance with § 2244(d)(2), that first PCRA proceeding statutorily tolled AEDPA's limitations period beginning on September 16, 2020. Jones' first PCRA proceeding remained pending through June 2, 2022, the date on which the deadline expired for him to petition for allowance of appeal to the Pennsylvania Supreme Court following the Superior Court's decision in *Jones II*. *See, e.g.*, *Martin v. Adm'r New Jersey State Prison*, 23 F.4th 261, 268 n.5, 269 (3d Cir. 2022); *Swartz v. Meyers*, 204 F.3d 417, 419-20 (3d Cir. 2000).

AEDPA's limitations period began to run again the next day, on June 3, 2022. Because 274 days had expired already from the limitations period, Jones had 91 more days—until on or around September 2, 2022—to file a timely federal habeas petition. He did not file his Petition until February 17, 2023, thereby making the claims he raised in the Petition untimely by around 168 days.

Importantly, AEDPA's statute of limitations was not statutorily tolled under § 2244(d)(2) during the pendency of Jones' second PCRA petition. That is because the PCRA court held that this second petition was untimely under state law. Thus, Jones' second PCRA proceeding does not qualify as a "properly filed application for State post-conviction or other collateral review" under § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."); *id.* at 414 ("When a postconviction petition is untimely under state

---

[7] To determine the dates during which AEDPA's statute of limitations ran, "we count beginning the first day following the date upon which the judgment became 'final,' *see* Fed. R. Civ. P. 6(a)(1), and treat his [first PCRA] petition as 'pending' from the date of its filing." *Martin*, 23 F.4th at 268 n.5.

law, that is the end of the matter for purposes of § 2244(d)(2).") (internal quotation marks and bracketed text omitted);

The Supreme Court has held that AEDPA's limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows both that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649. "This conjunctive standard requires showing *both* elements before we will permit tolling." *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis in original)).

The Court of Appeals has instructed that:

> "[t]here are no bright lines in determining whether equitable tolling is warranted in a given case." *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). Nevertheless, "courts must be sparing in their use of equitable tolling," *Seitzinger v. Reading Hosp. & Medical Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999), and should do so "only when the principles of equity would make the right application of a limitation period unfair." *Miller [v. New Jersey State Dept. of Corr.]*, 145 F.3d [616, 618 (3d Cir. 1998)].

*Id.; see also Martin*, 23 F.4th at 272-73.

Jones has failed to establish that he is entitled to equitable tolling. No evidence supports a finding that extraordinary circumstances prevented him from filing a timely habeas petition. Perhaps his PCRA counsel did not understand when AEDPA's statute of limitations expired and gave him bad advice in that regard. If she did, that type of error does not qualify as an extraordinary circumstance sufficient to warrant equitable tolling. *Holland*, 560 U.S. at 651-62 ("a garden variety claim of excusable neglect, such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.") (citations and internal quotations omitted); *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."); *Johnson v. Hendricks*, 314 F.3d 159, 162-63 (3d Cir.

2002) (rejecting the petitioner's argument that he established "extraordinary circumstances" because he relied on his attorney's erroneous advice regarding the expiration of the AEDPA's statute of limitations.) *See also Maples v. Thomas*, 565 U.S. 266, 281, 283 (2012) ("[W]e reasoned in *Coleman*, [501 U.S. at 753-54], because the attorney is the prisoner's agent, and under 'well-settled' principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent. Thus, when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause. We do not disturb that general rule. A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default. Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative. His acts or omissions therefore 'cannot fairly be attribute to [the client].' *Coleman*, 501 U.S. at 753.") (additional citations omitted).

Moreover, that Jones himself did not understand the ramifications of waiting so long to file his federal habeas petition after his first PCRA proceeding concluded does not establish equitable tolling. It is well established that a petitioner's "lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross v. Varano*, 712 F.3d 784, 799-800 (3d Cir. 2013) (citing *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003) (equitable tolling not justified where petitioner had one month left in limitations period in which he could have filed "at least a basic pro se habeas petition" at the time that petitioner's attorney informed him that he would not file an appeal in state court on his behalf and could no longer adequately represent him); and *Doe v. Menefee*, 391 F.3d 147, 177 (2d Cir. 2004) ("Given that we expect pro se petitioners to know when the limitations period expires . . . such inadvertence on *Doe*'s part cannot constitute reasonable

diligence."); *Martin*, 23 F.4th at 273 (ignorance of the law is not enough to invoke equitable tolling).

Another exception to AEDPA's statute of limitations is the "miscarriage of justice" exception. In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court recognized that the actual-innocence "gateway" to federal habeas review developed in *Schlup v. Delo*, 513 U.S. 298 (1995) for procedurally defaulted claims extends to cases in which a petitioner's claims would otherwise be barred by the expiration AEDPA's one-year statute of limitations. This exception provides that a petitioner's failure to comply with AEDPA's one-year limitations period may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup*, 513 U.S. at 316.

The "miscarriage of justice" exception only applies in extraordinary cases in which the petitioner shows that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup*, 513 U.S. at 316. Moreover, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (quoting *Bousley*, 523 U.S. at 623). This is not one of the rare cases in which the miscarriage of justice rule is implicated.

Based on the above, both of Jones' federal habeas claims are time-barred and he has shown no grounds that would allow him to avoid the time-bar and receive a merits review of his claims. Thus, the Court will grant Respondents' Motion to Dismiss because they are correct that Jones' claims are time-barred.

C. <u>Jones' Claims are Procedurally Defaulted</u>

Respondents also contend that Jones procedurally defaulted both of his claims because he failed to properly exhaust then in state court.

The "exhaustion doctrine" requires that a state prisoner raise her federal habeas claims in state court through the proper procedures before she litigates them in a federal habeas petition. 28 U.S.C. § 2254(b), (c); *see, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in her federal habeas petition to *the Superior Court either on direct or PCRA appeal. See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The Supreme Court has explained:

> State prisoners…often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all. If a state court would dismiss these claims for their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are. . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 165 L. Ed.2d 368 (2006). But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. *See Coleman*, 501 U.S. at 732, 111 S. Ct. 2546. Thus, federal habeas courts must apply "an important 'corollary' to the exhaustion requirement": the doctrine of procedural default.

12

> [*Davila v. Davis*, 582 U.S. 521, 527, 127 S. Ct. 2058, 2064 (2017)]. Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed.2d 518 (2000).
>
> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S. Ct. 18, 70 L. Ed.2d 1 (1981) (per curiam), and procedural default protects against "the significant harm to the States that results from the failure of federal courts to respect" state procedural rules, *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546. Ultimately, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [giving] an opportunity to the state courts to correct a constitutional violation," *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 94 L .Ed. 761 (1950), and to do so consistent with their own procedures, *see Edwards*, 529 U.S. at 452-453, 120 S. Ct. 1587.

*Shinn v. Ramirez*, 596 U.S. 366, 378-79 (2022).

Thus, the doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. For a Pennsylvania prisoner in a non-capital case, it provides that an individual defaults a federal habeas claim if he: (1) failed to present it to the Superior Court and cannot do so now because the state courts would decline to address the claim on the merits as state procedural rules (such as the state's waiver rules or the PCRA's one-year statute of limitations) bar such consideration; or (2) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

Here, Jones procedurally defaulted the Sixth Amendment claim of ineffective assistance of trial counsel that he brings as Ground One because the PCRA court determined that it was time-barred and waived under state law. The due process claim that Jones brings in Ground Two is

13

defaulted because he did not raise it as a stand-alone claim on direct appeal (or his PCRA proceedings, for that matter) and he cannot return to state court and litigate it now because it too would be barred as untimely and waived under state law.

As discussed above, a petitioner may avoid the dismissal of a claim as time-barred under AEDPA's statute of limitations by demonstrating that the federal habeas court's failure to consider it will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. A petitioner may also avoid the default of a claim under this "miscarriage of justice" rule. As the Court has already explained, this is not one of the rare cases in which the miscarriage of justice rule is implicated.

Finally, a petitioner also may avoid the default of a claim by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753 (emphasis in original). It is the petitioner's burden to prove "cause" and "prejudice" to overcome the default of a claim, *id.* at 750, and Jones does not invoke this exception to the procedural default doctrine.

Based on the above, Jones procedurally defaulted both of the claims he brings in this federal habeas case and there are no grounds to excuse Jones' default of them. The Court will therefore grant Respondents' Motion to Dismiss because Jones' claims are time-barred and also procedurally defaulted.

### III. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition

on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Jones' claims should be denied as untimely and procedurally defaulted. Thus, a certificate of appealability is denied with respect to each claim.

### IV. Conclusion

For these reasons, the Court will grant Respondents' Motion to Dismiss (ECF 17), deny the claims Jones' raises in the Petition because they are time-barred and procedurally defaulted, and deny a certificate of appealability with respect to each claim.

An appropriate Order follows.

Date:  May 24, 2024

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge